# DEPARTMENT OF BUSINESS REGULATION, etc. v TURTLE REEF ASSOCIATES, INC., etc.

Case No. 85-1835

State of Florida, Division of Administrative Hearings

March 5, 1986

## APPEARANCES OF COUNSEL

**Daniel J. Bosanko** for petitioner.

**Carl A. Bertoch** for respondent.

## OPINION

R.L. CALEEN, JR., Hearing Officer.

This case was heard by R. L. Caleen, Jr., Hearing Officer with the Division of Administrative Hearings, on November 15, 1985, in Fort Pierce, Florida. The parties were represented by counsel.

### *ISSUE*

What affirmative action should be ordered and what civil penalty

imposed, if any, for Respondent's admitted violation of Section 718.301(4)(c), *Florida Statutes*, by failing to provide a review of books and financial records of the Turtle Reef (time share) Condominium I by a Certified Public Accountant within 60 days of the condominium's turnover meeting in December 1983.

## BACKGROUND

By Notice to Show Cause dated May 1, 1985 (as later amended by notice dated November 12, 1985), Petitioner, Department of Business Regulation, Division of Florida Land Sales, Condominiums and Mobile Homes ("Division") charged Turtle Reef Associates, Inc. ("Respondent"), with violating Section 718.301(4)(c), *Florida Statutes*, by failing to provide the required accountant's review of books and records of Turtle Reef Condominium within 60 days of a turnover meeting on December 17, 1983.

Respondent requested a hearing on the charge and on June 3, 1985, the Division transferred this case to the Division of Administrative Hearings for assignment of a hearing officer. Hearing was set for November 15, 1985.

Respondent's motion to join Turtle Reed I Condominium Association, Inc. as a party was denied on July 23, 1985.

At final hearing, the parties stipulated to certain facts and Respondent admitted violation Section 718.301(4)(c), *Florida Statutes*, as charged, but contended that its failure to perform the required condominium turnover financial review was due to an intervening court administered receivership and other mitigating factors. Evidence was then presented to determine what corrective action and civil penalty, if any, was appropriate. The Division presented the testimony of Susan C. Kelley and Richard R. Russell; Respondent presented the testimony of Hazen Kreis. Respondent's Exhibit Nos. 1 through 3 and Joint Exhibit No. 1 were received in evidence.

The transcript of hearing was filed on January 3, 1986. The parties filed proposed findings of fact and responses by February 19, 1986. Rulings on the proposed findings are contained in the attached Appendix.

Based on the parties' stipulation of facts and the evidence adduced at hearing, the following facts are determined:

## FINDINGS OF FACT

### I.

#### Facts Based on Stipulation

1. Turtle Reef I Condominium (the "Condominium") is a time share development located in St. Lucie County, Florida, which is presently filed and registered with the State of Florida pursuant to Chapters 718 and 721, *Florida Statutes*. It was created as a condominium in 1976 prior to the existence of Chapter 721, *Florida Statutes*, which is the Florida Real Estate Time Sharing Act. Since its inception, the Condominium developed as a time share development in which weekly time share periods, as now defined in Section 721.05, *Florida Statutes* (1985), were offered for sale to the public by the developer.

2. Respondent, Turtle Reef Associates, Inc., a Florida Corporation, is and has been since 1976 the sole developer of the Condominium and American Resort Management, Inc. ("A.R.M.") which managed the Condominium and the affairs of its condominium association ("Condominium Association") beginning on April 6, 1976. Hazen Kreis is an officer of, and a major stockholder in, both the Respondent corporation and A.R.M., and has been so since 1976. On or about November 1, 1984, SKF Management took over actual on-site management control of the Condominium from A.R.M. (This turnover of on-site management is not intended to imply any possible change in A.R.M.'s management rights or obligations).

3. From approximately June 1980 until August 1984, A.R.M., the Respondent and the Condominium Association were placed in receivership by the Nineteenth Judicial Circuit in and for St. Lucie County, Case No. CA-79-601. W. R. Scott, Esquire, was the court appointed receiver during this period.

4. Since December 1983, a majority of the Board of Directors of the Condominium Association has been elected by the time share period owners other than Respondent, the developer. In December 1983, Respondent commenced turnover of the Association to the other time share period owners in accordance with Section 718.301, *Florida Statutes*.

5. Respondent admits that it has not, as of the date of hearing, provided the Condominium Association with an accounting review and the records required by Section 718.301(4), *Florida Statutes*.

6. Since creation of the Condominium until the date of hearing, the developer (Respondent) has retained ownership of in excess of 300 time share periods in the Condominium.

## II.

### Facts Based on Evidence

7. As admitted by Hazen Kreis, President of Respondent corporation, the books of the Association were not in order in December 1983, at turnover although accountants had been retained from the inception of the project to maintain the necessary accounting records. Turnover occurred, however, near the end of the four-year court supervised receivership. The receiver was responsible for all of the Condominium Association's financial transactions which took place during that period and retained the services of an accounting firm "Xavier Weiner, CPA," to maintain the necessary condominium financial records.

8. At turnover, Mr. Kreis was elected as a member of the Association's new Board. He told the Board that the Condominium records were there "but the books were not kept. . .that if they would select an accounting firm, [Respondent] would pay for them to bring the books to date and to effect a turnover," or words to that effect. (Tr-p.10)

9. In 1984, the Board selected "Johns and Odom," an accounting firm, to prepare the Association's books and records as required for turnover. Respondent paid this accounting firm approximately $12,000 until March 1985, when it resigned. The Board then selected "Barnes, CPA," another accounting firm, to complete the task of bringing the records up-to-date and conducting the audit. Respondent paid that firm $5,000 for its services. In July 1985, Respondent halted that firm's work because of pending settlement negotiations with the Division (one of the issues being negotiated was whether Respondent was responsible for updating accounting records for 1982 and 1983).

10. During 1984, "Johns and Odom" found the records of the Association to be in such poor condition that Mr. Kreis hired outside help (four persons) for several months to help assemble and bring the records up-to-date.[1] The Condominium Association's books and records which the accountants were working on dated back to 1976, when the condominium was created. As far back as 1978, occasional inaccuracies were discovered in the Association's ledger cards. (TR-50)

11. For a 30-day period following the receivership in August 1984, A.R.M. (the management company of which Mr. Kreis was an officer and major stockholder) took control of the management of the Condo-

---

[1] Mr. Kreis' statement that the records were in poor condition is corroborated by the (hearsay) statement of Mr. Odom to Mr. Russell, President of the Association, in the spring or summer of 1984. (TR-83)

minium. During that period, "Johns and Odom" continued to work on the accounting records of the Association.

12. As of November 1, 1984, SKF, Inc., was hired by the Association to handle management of the financial affairs of the Association and control its records.

13. In July 1985, two months after issuance of the Notice to Show Cause, representatives of the Division and the Respondent met in Orlando, Florida, to negotiate a possible settlement. After that meeting, Mr. Kreis temporarily halted the preparation of bookkeeping records and the accounting process because the negotiations included a proposal that an account for certain years be waived. After the negotiations fell through (a week before hearing) and the Association filed a suit against the Respondent, Mr. Kreis restarted the accounting work. As of the date of hearing, Respondent had completed the required bookkeeping corrections through October 1984 (when SKF took control of the management of the Condominium). By now, Respondent has completed or almost completed the account's turnover review which, under the statute, was due in February 1983.

14. Respondent made a bona fide effort to prepare the books and records of the Association within 60 days of the December 1983 turnover and has spent in excess of $17,000 toward that end. The books and records were in such poor condition in December 1983 that accountants have spent many months placing them in order and completing the required accountant's turnover review. The financial records during the three and one half years immediately preceding turnover were, however, the responsibility of the court-appointed receiver. Although the records *prior* to the inception of the receivership had some discrepancies, the Division has not convincingly established that the pre-June 1980 records (for which Respondent was directly responsible) were so poorly kept as to preclude completion of the required accountant's review within 60 days of December 31, 1983. Respondent should not be penalized for the failure of the court-appointed receiver to adequately maintain financial records, for it had no responsibility for, or control over, the receiver. Neither should Respondent be penalized for temporarily halting the on-going accountant's work during settlement negotiations, when one of the items discussed was a possible waiver of an accountant's report for part of the pre-turnover period. This temporary stoppage was reasonable in order to avoid the possibility of incurring unnecessary expenses. The failure to submit the required accountant's report within 60 days of December 31, 1983, is the only deficiency alleged to exist at turnover; and Respondent is now ready and willing to submit it.

## CONCLUSIONS OF LAW

1. The Division of Administrative Hearings has jurisdiction over the parties and subject matter of this proceeding. Section 120.57(1), *Fla. Stat.* (1985).

2. Section 718.301, *Florida Statutes* (1983), provides in relevant part:

(4) Prior to, or not more than 60 days after, the time that unit owners other than the developer elect a majority of the members of the board of administration of an association, the developer shall relinquish control of the association, and the unit owners shall accept control. Simultaneously, the developer shall deliver to the association all property of the unit owners and of the association held or controlled by the developer, including, but not limited to, the following items, if applicable, as to each condominium operated by the association.

. . . . . . . . . . .

(c) The financial records, including financial statements of the association, and source documents since the incorporation of the association through the date of turnover. The records shall be reviewed by an independent certified public accountant. The minimum report required shall be a review in accordance with generally accepted accounting standards as defined by rule by the Board of Accountancy. The accountant performing the review shall examine to the extent necessary supporting documents and records, including the cash disbursements and related paid invoices to determine if expenditures were for association purposes and the billings, case receipts, and related records to determine that the developer was charged and paid the proper amounts of assessments.

3. Section 718.501(1), *Florida Statutes, inter alia,* empowers the Division to enforce Chapter 718, *Florida Statutes,* by issuing an order (i.) requiring a developer to take such affirmative action as necessary to carry out the purposes of the statute and (ii.) imposing a civil penalty of up to $5,000 for each violation.

4. The Division alleges and the Respondent concedes that it violated Section 718.301(4)(c), *Florida Statutes* (1983), by failing to submit the required report by a certified public accountant within 60 days of turnover.

5. The mitigating evidence of record, however, establishes that Respondent has made a continuing bona fide effort to provide the required accounting and has incurred considerable expenses to that end. Delay in the accountant's report is due, in large part, to the failure of the court-appointed receiver to properly maintain financial

records for the Association during the three and one-half years preceding turnover. During that period the receiver, not the Respondent, controlled and handled the financial transactions for the Association. (Nevertheless, Respondent has hired and paid accountants to organize and update the records covering that three and one-half year period.) There is no evidence that the delay in submitting the accountant's report has injured the Association. Under such circumstances, no civil penalty is justified, provided Respondent submits the required accountant's report within 35 days of entry of a final order by the Division.

## RECOMMENDATION

Accordingly, based on the foregoing, it is

RECOMMENDED:

That the Division enter a final order finding that Respondent violated Section 718.301(4)(c), *Florida Statutes*, and requiring it to complete and deliver the required accountant's turnover report within 35 days.

DONE and ORDERED this 5th day of March, 1986, in Tallahassee, Florida.